IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 23-cv-02113-PAB-TPO

LUCAS CRANOR,

　　　Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,

　　　Defendant.

---

## ORDER

---

This matter comes before the Court on Defendant's Motion for Summary Judgment [Docket No. 57]. Defendant State Farm Mutual Automobile Insurance Company ("State Farm") moves for summary judgment on plaintiff' Lucas Cranor's claims for bad faith breach of an insurance contract and statutory unreasonable delay of benefits. Docket No. 57 at 2. Mr. Cranor filed a response. Docket No. 60. State Farm filed a reply. Docket No. 65. The Court has jurisdiction pursuant to 28 U.S.C. § 1332.

## I. UNDISPUTED FACTS[1]

### A. <u>The Automobile Crash</u>

Mr. Cranor alleges he hit a deer while driving his 2022 Ram 1500 Limited (the "truck") on November 14, 2022. Docket No. 57 at 3, ¶ 8. On the date of the loss, State Farm provided comprehensive coverage for Mr. Cranor's vehicle (the "policy"). *Id.* at 2, ¶ 1. The State Farm policy includes the following language:

---

[1] The following facts are undisputed unless otherwise noted.

> (1) [State Farm has] the right to choose one of the following to determine the cost to repair the covered vehicle: . . .
>> (b) A bid or repair estimate approved by us; or
>>
>> (c) A repair estimate that is written based upon or adjusted to:
>>
>>> (i) the prevailing competitive price . . . .  The prevailing competitive price means prices charged by a majority of the repair market in the area where the covered vehicle is to be repaired as determined by a survey made by us.

*Id.*, ¶ 2.  Mr. Cranor reported the collision and submitted his claim to State Farm on November 14, 2022.  Docket No. 60 at 3, ¶ 23.

### B. **Repair Efforts**

State Farm advises its insureds, via its website: "[y]ou can choose any shop you like to repair your vehicle's damage.  But if you go with a shop that's in the State Farm Select Service network, you could save time and effort."  Docket No. 57 at 2, ¶ 3.  Almost all major car insurance companies use a select or preferred shop system; Mr. Cranor's proffered expert on industry standards, Aaron Castillo, did not refute this.  *Id.*, ¶ 4.  State Farm never told Mr. Cranor that it would not pay his claim, or that payment of his claim would be delayed if he utilized a repair shop other than a State Farm Select Service provider.  *Id.* at 3, ¶ 11.  Mr. Cranor chose to bring his truck to Crash Champions for repair.  *Id.*, ¶ 9.[2]  Crash Champions is an autobody repair shop that is a

---

[2] Plaintiff denies this fact insofar as it uses the word "chose," stating that "[w]hile Plaintiff ultimately decided to take his truck to CC, Plaintiff testified that State Farm 'pushed' him to use CC and 'it just felt like [taking the car to CC was] what [he] had to do.'"  *See* Docket No. 60 at 2, ¶ 9.  Mr. Cranor's feelings about being pushed do not create a dispute as to the fact that he made the decision to bring the truck to Crash Champions.  The Court finds that this response fails to create a genuine dispute of material fact as to defendant's asserted fact that it was Mr. Cranor who made the decision to take the truck to Crash Champions.  The Court deems this fact admitted.

part of State Farm's Select Service network.[3]  State Farm was not a party to the

contract between Mr. Cranor and Crash Champions.  *Id.*, ¶ 5.  There was no policy

provision requiring State Farm to monitor or supervise Crash Champions.  *Id.*, ¶ 6.

The truck arrived at Crash Champions on November 15, 2022.  Docket No. 60 at

4, ¶ 24.  Mr. Cranor picked up the truck from Crash Champions on January 20, 2023,

and he immediately noticed issues with the truck.  *Id.*, ¶ 27.  Mr. Cranor returned the

truck to Crash Champions and re-returned to pick it up on January 27, 2023 or February

3, 2023.  *Id.*, ¶ 28.  Upon pick-up, he still noticed issues.  *Id.*

On January 31, 2023, and after the initial repair by Crash Champions, Mr. Cranor

reported additional problems with the truck to State Farm.  Docket No. 57 at 4, ¶ 14.

State Farm performed an in-person inspection of the truck on February 10, 2023, before

the "tear down" of the vehicle.  *Id.*, ¶ 15.[4]  At the February 10 inspection of the truck,

State Farm wrote Mr. Cranor a check for $446 to cover the damage from Crash

Champions's poor repairs.  Docket No. 60 at 4, ¶ 29.

---

[3] Neither party actually offers an undisputed fact that Crash Champions is part of State Farm's Select Service network.  However, the complaint alleges that Crash Champions was part of State Farm's network, *see* Docket No. 4 at 2, ¶ 5, and the briefs of both parties appear to assume that Crash Champions was part of this network.  The Court therefore also assumes that Crash Champions was part of State Farm's network.

[4] Plaintiff admits this fact "in part," stating that "State Farm sent someone to do an inspection of the truck, but Mr. Cranor testified that they did not fully inspect the truck.  'They just looked at the few things that [he] brought up that [he] could notice.'  The purported 'inspector' did not look under the hood of the truck or do anything further."  Docket No. 60 at 3, ¶ 15 (internal citation omitted).  The Court finds this to be nonresponsive, as defendant asserts only that it conducted an inspection, while plaintiff's response relates to the thoroughness of the inspection.  The Court deems this fact admitted.

Also around the middle of February, Mr. Cranor took the truck to Service King, another of State Farm's Select Service shops, which was unable to properly repair the truck. *Id.*, ¶ 30.

On or around March 15, 2023, Mr. Cranor took the truck to an auto repair shop called Nylund's. *Id.*, ¶ 32. State Farm's letter dated March 15, 2023 explained to Mr. Cranor that "[t]he repair facility you have chosen may charge more than what State Farm has determined is payable. You may be responsible for charges that exceed what is payable." Docket No. 57 at 4, ¶ 20. The letter further explained that "Nylund's Collision Center may not agree with [State Farm's] estimate and any supplements to it. You may be personally responsible for the differences." *Id.*, ¶ 21. State Farm never told Mr. Cranor that he could not get his truck repaired at Nylund's. *Id.* at 3, ¶ 10.[5] Mr. Cranor testified he has no evidence that anything he was told by State Farm with respect to Nylund's was false. *Id.* at 5, ¶ 22. Nylund's acknowledges on its website: "[y]es, you have the right to request OEM parts for your repairs. However, some Insurance Companies may require you to pay the difference in cost between OEM parts and aftermarket or reconditioned parts." *Id.* at 3, ¶ 7.

State Farm performed another inspection on the truck on March 20, 2023 after the "tear down" of the vehicle had occurred. *Id.* at 4, ¶ 17.[6] On March 24, 2023 State Farm agreed Mr. Cranor's truck was a "potential total loss." *Id.*, ¶ 18.

---

[5] Plaintiff disputes this fact, stating that "Defendant told Plaintiff that he had to take the Truck to a Service Select shop after CC's botched repairs." Docket No. 60 at 2, ¶ 10. The exhibit that plaintiff cites does not contradict the asserted fact. *See* Docket No. 57-9 at 45-46, 45:9-46:5. The Court deems this fact admitted.

[6] Defendant's asserted facts mention a "tear down" of the truck that occurred sometime between February 10, 2023 and March 20, 2023. *See* Docket No. 57 at 4, ¶ 15 (referencing an inspection that occurred "before the 'tear down'") and *id.* at 4, ¶ 17

C. **Valuation Process**

On March 23, 2023 at 5:47 PM, CCCOne[7] ran a report that valued the truck at $59,579.00. Docket No. 60 at 5, ¶ 34. On March 24, 2023, State Farm sent a letter to Mr. Cranor advising him that it prepared a total loss estimate for a $59,579.00 valuation of his truck, with $6,211.84 ultimately going to Mr. Cranor. *Id.*, ¶ 36.[8] On March 24, 2023 at 11:06 AM, CCCOne ran a report that valued the truck at $60,004.00. *Id.*, ¶ 35. On March 24, 2023, Mr. Cranor emailed State Farm and asked it to provide an actual cash value estimate that included features on his truck that were not included in the previous estimate, including the new tires, the dashboard camera, and the tinted windows. *Id.*, ¶ 37.[9] On March 25, 2023, CCCOne ran a report that valued the truck at $63,684.00, adding an additional $3,680 as a condition adjustment. *Id.*, ¶ 38. On March 25, 2023, Mr. Cranor emailed State Farm and explained that the actual cash value should begin at $65,000 based on a listing of a comparable truck (a "comp"). *Id.*,

---

(referencing an inspection that occurred "after the 'tear down.'"). Neither party offers details as to the exact date or scope of the "tear down."

[7] The undisputed facts do not clearly identify CCCOne's role in the process, but the Court understands it to be a software provider that assists State Farm with valuing automobiles.

[8] Plaintiff's asserted fact listed the estimate as $59,574. *See* Docket No. 60 at 5, ¶ 36. Defendant replies that the estimate was actually $59,579. Docket No. 65 at 4, ¶ 36. Defendant is correct regarding the estimate. *See* Docket No. 60-7 at 1. The Court understands plaintiff to have made a typographical error and uses the correct number here.

[9] Defendant replies that it admits that "the citation to the exhibit is accurate," but denies "that the vehicle features requested were not included in the previous estimate." Docket No. 65 at 4, ¶ 37. The exhibit defendant cites does not support its position. *See* Docket No. 60-8. The Court deems this fact admitted. The Court notes that the difference between the valuation amount and the amount that would go to Mr. Cranor is due to the fact that payment was also due to the lien holder on the vehicle. *See, e.g.*, Docket No. 60-21 at 1.

¶ 39.  On March 28, 2023, State Farm again offered a $63,684.00 valuation of the truck.
*Id.*, ¶ 40.[10]

On March 30, 2023, Mr. Cranor revoked his authorization for State Farm to take
possession of the truck.  *Id.*, ¶ 41.

On March 31, 2023, CCCOne ran a report that valued the truck at $64,301.00,
increasing the base value of the truck by approximately $300 and adding a $290.00
refurbishment addition.  *Id.* at 6, ¶ 42.  On April 3, 2023, Mr. Cranor sent eight comps to
State Farm for CCCOne to consider.  *Id.*, ¶ 43.  On April 14, 2023, State Farm offered
Mr. Cranor a $67,124.00 valuation for the truck, with $14,069.68 going to Mr. Cranor.
*Id.*, ¶ 44.[11]

On April 19, 2023, State Farm explained that two of the trucks Mr. Cranor sent as
comps were accepted, two were rejected because one was a diesel fuel vehicle and the
other was a hybrid vehicle, and one was already included as a comp.  *Id.*, ¶ 45.  On
April 20, 2023, State Farm again offered Mr. Cranor a total of $67,124.00 valuation on
his truck, with $14,069.68 going to Mr. Cranor.  *Id.*, ¶ 46.[12]  On April 22, 2023, Mr.

---

[10] Defendant replies "[a]dmit partially, as State Farm determined the listed
amount to be the actual cash value of the vehicle.  Deny partially, as this figure
excluded taxes and the offer would be higher than just the figure for the actual cash
value."  Docket No. 65 at 4, ¶ 40.  The Court understands defendant to be concerned
about the possibility of valuation metrics being used inconsistently, leading to
comparisons that are not "apples to apples."  Insofar as this is defendant's concern, the
Court notes that the valuation figures used throughout this fact section are all for the
actual cash value ("ACV") of the truck.  The Court deems this fact admitted.
[11] Defendant replies "[a]dmit, but for clarity, State Farm offered $72,520.93 for
the vehicle's actual cash value of $67,124."  Docket No. 65 at 5, ¶ 44.  For the reasons
discussed in footnote 10, the Court deems this fact admitted.
[12] Defendant replies "[a]dmit, albeit with the same clarifications as # 44, above."
Docket No. 65 at 5, ¶ 46.  For the reasons discussed in footnote 10, the Court deems
this fact admitted.

Cranor responded that the truck he suggested as a comp did not have a hybrid engine

and inquired about the remaining three comps he sent to State Farm. *Id.*, ¶ 47.  On

April 26, 2023, State Farm offered Mr. Cranor a total of $67,451.00 valuation for the

truck, explaining that a $3,150 "Date of Loss" adjustment had been added with the

approval of management, with $14,422.51 going to Mr. Cranor. *Id.*, ¶ 49.[13]  On April 24,

2023, State Farm digitally issued a net payment of $14,422.51 to Mr. Cranor, pursuant

to the actual cash value breakdown explained to Mr. Cranor in an April 26, 2023 letter.

Docket No. 57 at 4, ¶ 19.[14]

## II. LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when

the "movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986).  A disputed fact is "material" if,

under the relevant substantive law, it is essential to proper disposition of the claim.

*Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001).  Only disputes

over material facts can create a genuine issue for trial and preclude summary judgment.

*Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005).  An issue is

---

[13] Defendant replies "[a]dmit, but for clarity, this figure was the ACV value.  It offered Plaintiff $72,873.76."  Docket No. 65 at 5, ¶ 49.  For the same reasons discussed in footnote 10, the Court deems this fact admitted.

[14] There is a discrepancy between defendant's asserted fact that defendant issued a payment to plaintiff on April 24, 2023 – suggesting a conclusion to the parties' negotiations – and plaintiff's asserted fact that defendant made an "offer" to plaintiff on April 26, 2023.  *Compare* Docket No. 57 at 4, ¶ 19 *with* Docket No. 60 at 6, ¶ 49.  Both parties cite the same April 26, 2023 letter in support of their respective exhibits.  *Compare* Docket No. 56-16 at 2 *with* Docket No. 60-21 at 1.  Regardless of the exact date, it appears that this payment and letter constituted the final events in the negotiation between State Farm and Mr. Cranor over the value of the truck, and the exact date on which this process concluded is immaterial to the Court's analysis.

"genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quotations omitted). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994). The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotations omitted). "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman*, 252 F.3d at 1115. When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*

## III.  ANALYSIS

Mr. Cranor brings both a statutory bad faith claim, pursuant to Colo. Rev. Stat. §§ 10-3-115 and 10-3-116, and a common law bad faith claim. Docket No. 4 at 16-18.

### A.  Standards for Statutory and Common Law Bath Faith Claims

Section 10-3-1116(a) provides that people who suffer an unreasonable delay or denial of benefits, as defined in Colo. Rev. Stat. § 10-3-1115, may bring an action for attorneys' fees and twice the covered benefit. *See* Colo. Rev. Stat. § 10-3-1116. Pursuant to § 10-3-1115, an insurer may not "unreasonably delay or deny payment of a

claim for benefits owed to or on behalf of any first-party claimant."  Colo. Rev. Stat.

§ 10-3-1115(1)(a).  An insurer's conduct is unreasonable "if the insurer delayed or

denied authorizing payment of a covered benefit without a reasonable basis for that

action."  Colo. Rev. Stat. § 10-3-1115(2).  The determination of whether an insurer has

breached its duties to the insured is one of reasonableness under the circumstances.

*Estate of Morris v. COPIC Ins. Co.*, 192 P.3d 519, 523 (Colo. App. 2008).  "In Colorado,

acting 'without a reasonable basis' has been construed to mean pursuing a groundless

position that is not supported by credible evidence."  *See Masters v. Safeco Ins. Co. of

Am.*, No. 20-cv-00631-PAB-NRN, 2021 WL 4326269, at *5 (D. Colo. Sept. 23, 2021)

(citing *Bd. of Cnty. Comm'rs v. Auslaender*, 745 P.2d 999, 1001 (Colo. 1987)).  The

question is whether a reasonable insurer under similar circumstances would have

denied or delayed payment of the claim.  *Estate of Morris*, 192 P.3d at 523.  The

reasonableness of an insurer's conduct must be determined objectively, based on proof

of industry standards.  *Schultz v. GEICO Cas. Co.,* 429 P.3d 844, 847 (Colo. 2018).

Whether an insurer's conduct was reasonable under the circumstances is ordinarily a

question of fact for the jury.  *Zolman v. Pinnacol Assurance*, 261 P.3d 490, 497 (Colo.

App. 2011).  However, in appropriate circumstances, as when there are no genuine

disputes of material facts, reasonableness may be decided as a matter of law.  *Estate of

Morris*, 192 P.3d at 524.

To prevail on a claim for bad faith delay or denial of insurance benefits under

Colorado common law, a plaintiff must establish that her insurer (1) acted unreasonably

under the circumstances; and (2) knew of, or had reckless disregard for, the

unreasonableness of its actions.  *Goodson v. Am. Standard Ins. Co. of Wisc.*, 89 P.3d

409, 415 (Colo. 2004).  "The only element at issue in the statutory claim is whether an insurer denied benefits without a reasonable basis."  *Cooper*, 653 F. Supp. 3d at 878 (alterations omitted) (quoting *Williams v. Owners Insurance Co.*, 621 F. App'x 914, 919 (10th Cir. 2015) (unpublished)).  "By contrast, to prove a first-party claim of common law bad faith, a plaintiff must show not only that the insurer's conduct in processing or denying a valid claim was unreasonable but also that the insurer knew its conduct was unreasonable or recklessly disregarded the unreasonableness of its conduct."  *Id.* (citing *Travelers Insurance Co. v. Savio*, 706 P.2d 1258, 1275–76 (Colo. 1985)).  "Accordingly, a claim of common law bad faith imposes a more exacting standard of proof than a statutory claim."  *Id.* (citation omitted)); *Kisselman v. Am. Family Mut. Ins. Co.*, 292 P.3d 964, 975 (Colo. App. 2011) (the "burden of proving th[e] statutory claim is less onerous than that required to prove a claim under the common law for breach of the duty of good faith and fair dealing").

### B. <u>Unreasonable Conduct</u>

Although the captions of the two claims and the wording of the allegations in the two claims are slightly different, the Court understands both claims to rest on a common set of allegedly unreasonable conduct by State Farm.  *See* Docket No. 4 at 16-18. Moreover, the briefing focuses primarily on the reasonableness of State Farm's conduct – a common element to both claims.  *See Bruce v. Pac. Specialty Ins. Co.*, No. 15-cv-01323-RM-CBS, 2016 WL 11693598, at *9 (D. Colo. Aug. 15, 2016) ("for both the common law and statutory bad faith claims . . . the plaintiff must prove that the insurance company's conduct was objectively unreasonable."), *report and recommendation adopted*, 2017 WL 11545237 (D. Colo. Feb. 8, 2017), *aff'd*, 755 F.

App'x 731 (10th Cir. 2018) (unpublished).  The Court understands Mr. Cranor to allege

five forms of unreasonable conduct and will organize its analysis accordingly.

### 1. Steering

Mr. Cranor alleges that State Farm acted unreasonably by "steering" him to use

Crash Champions and later "steering" him away from Nylund's.  Docket No. 4 at 14, 17-

18, ¶¶ 29, 49, 55.  Mr. Cranor advances two arguments in support of why State Farm's

actions constituted steering and were unreasonable.

The first involves Colo. Rev. Stat. § 10-4-120, which states in relevant part that:

> (2) An insurer or its agent that issues or renews a policy that insures real or
> personal property shall not:
>
> > (a) Directly or indirectly require that appraisals or repairs to the property
> > be made or not be made by a specified repair business; [or]
>
> > (b) Represent to a beneficiary or claimant who is making a claim under a
> > policy that the use of, or the failure to use, a particular repair business
> > may result in the nonpayment or delayed payment of a claim;

Colo. Rev. Stat. § 10-4-120(2)(a)-(b).  Mr. Cranor's theory is that State Farm violated

this statute by pushing or steering him to use Crash Champions and by pushing or

steering him away from using Nylund's and that violation of a statutory provision is

evidence of unreasonable conduct.  See Docket No. 60 at 12-15.

As to defendant's alleged steering of Mr. Cranor to Crash Champions, the Court

finds that Mr. Cranor has failed to create a genuine dispute of material fact.  State

Farm's website touted the potential benefits of using a repair shop within the Select

Service network.  See Docket No. 57 at 2, ¶ 3 ("if you go with a shop that's in the State

Farm Select Service network, you could save time and effort.").  However, it is

undisputed that State Farm never told Mr. Cranor that it would not pay his claim or that

payment of his claim would be delayed if he utilized a repair shop other than a State

Farm Select Service provider.  *Id.* at 3, ¶ 11.  And it is undisputed that Mr. Cranor chose

to bring his truck to Crash Champions.  *Id.*, ¶ 9.  There is no evidence that State Farm

"pushed" Mr. Cranor to take the truck there.

Regarding Mr. Cranor's claim that State Farm steered him away from Nylund's,

the Court finds that Mr. Cranor has failed to create a genuine dispute of material fact as

to whether State Farm violated the statute.  First, State Farm never stated that Mr.

Cranor could not use Nylund's.  Docket No. 57 at 3, ¶ 10.  Second, Colo. Rev. Stat.

§ 10-4-120(2)(b) bars an insurer from representing to a claimant that the "use of . . . a

particular repair business may result in the nonpayment or delayed payment of a claim."

State Farm's policy with Mr. Cranor states that State Farm has the right to determine

the cost of the repair of the vehicle in reference to the "prevailing competitive price,"

based on the prices "charged by a majority of the repair market in the area where the

covered vehicle is to be repaired."  Docket No. 57 at 2, ¶ 2.  State Farm told Mr. Cranor

that Nylund's "may charge more than what State Farm has determined is payable.  You

may be responsible for charges that exceed what is payable."  *Id.* at 4, ¶ 20.  State

Farm further stated that "Nylund's Collision Center may not agree with [State Farm's]

estimate and any supplements to it.  You may be personally responsible for the

differences."  *Id.*, ¶ 21.  State Farm's policy with Mr. Cranor gave it the contractual right

to value his claim based on a prevailing market rate.  *Id.* at 2, ¶ 2.  Nylund's website

states the same regarding the practice of insurers generally.  *Id.* at 3, ¶ 7.  Moreover,

Mr. Cranor admitted that State Farm did not tell him anything false regarding Nylund's.

*Id.* at 5, ¶ 22.  The Court finds that State Farm did not violate Colo. Rev. Stat. § 10-4-

120(2)(b).  It did not threaten nonpayment of the "claim" as a result of Mr. Cranor using

Nylund's; rather, it warned Mr. Cranor of the possibility of nonpayment of amounts

greater than the State Farm-determined claim value.  Moreover, Mr. Cranor has not

identified any evidence that State Farm stated that payment of Mr. Cranor's claim would

be delayed as a result of using Nylund's.

Mr. Cranor advances another basis to believe a reasonable juror could conclude

that State Farm's conduct was unreasonable.  As noted earlier, the reasonableness of

an insurer's conduct is determined based on proof of industry standards.  *See Schultz*,

429 P.3d at 847.  Mr. Cranor points to the report of his retained expert, Aaron Castillo,

as evidence that State Farm acted unreasonably in steering Mr. Cranor to Crash

Champions and away from Nylund's.  *See* Docket No. 60 at 13.  In the referenced

portion of the expert report, Mr. Castillo states that:

> In my professional opinion, State Farm failed to act in bad faith by sending out  a
> letter that Nylund's Collision Center may charge more than State Farm will
> approve before they even inspected the vehicle.  This should never happen as it
> has the tendency to intimidate the customer into choosing a different shop to do
> the repairs and is a steering technique engaging in unfair claims practice.

Docket No. 57-8 at 9.

There are two problems with this evidence.  First, the statement of Mr. Castillo

that Mr. Cranor relies upon in his response to the motion for summary judgment, *see id.*,

was not identified by Mr. Cranor as either additional undisputed or additional disputed

facts.  Thus, it is not properly before the Court on summary judgment.  *See* Practice

Standards (Civil cases), Chief Judge Philip A. Brimmer, § III.F.3.b.v.  For this reason,

the Court declines to consider it.  But even if the Court considers Mr. Castillo's

statement, it does not help Mr. Cranor's argument.  The Court has already found, based

on the undisputed evidence, that State Farm did not violate Colo. Rev. Stat. § 10-4-

120(2)(b), which is the "unfair claims practice" that Mr. Castillo relies upon.  As a result, because the foundation for Mr. Castillo's opinion is incorrect, it cannot create a genuine dispute of material fact regarding the reasonableness of State Farm's alleged "steering."[15]  The Court finds that State Farm is entitled to summary judgment on Mr. Cranor's bad faith claims insofar as they rely on a theory that State Farm unreasonably "steered" Mr. Cranor to Crash Champions and away from Nylund's.

### 2.  Not Taking Responsibility for Poor Repairs by Crash Champions

One of the premises of plaintiff's bad faith claims against State Farm is that State Farm is liable for Crash Champions's poor repairs of plaintiff's truck.  Docket No. 60 at 8-12.  As discussed above, plaintiff's theory relies in part on the allegation that State Farm steered plaintiff to Crash Champions.  Another aspect of his theory is that "State Farm has not established CC is an independent contractor."  *Id.* at 8.  Mr. Cranor acknowledges that, "[W]hen an insured selects and retains an independent contractor, even upon the recommendation of his or her insurer, the insured has primary responsibility for supervising the contractor, absent any representation that the insurer would assume that duty."  Docket No. 60 at 8 (quoting *Dunn v. Am. Fam. Ins.*, 251 P.3d 1232, 1236 (Colo. App. 2010)).  Plaintiff claims that State Farm has an agreement with Crash Champions whereby "CC prepares an estimate for State Farm and get[s] authorization before proceeding with the repairs."  *Id.* at 10.  Mr. Cranor also claims that, "in addition to authorizing the repairs, State Farm directed CC's work in some capacity,

---

[15]  Mr. Castillo also offers what is essentially a legal opinion on the meaning of Colo. Rev. Stat. § 10-4-120 and why he believes State Farm violated that statute. Docket No. 57-8 at 5-6.  Mr. Castillo is not a legal expert, and the Court declines to place any weight on this analysis.

as the CC representative testified that its repair guidelines follow State Farm's guidelines." *Id.* The Court finds that plaintiff's theory lacks legal and factual support.

It is undisputed that State Farm was not a party to the contract between Mr. Cranor and Crash Champions and that there was no policy provision requiring State Farm to monitor or supervise Crash Champions. Docket No. 57 at 3, ¶¶ 5-6. Colorado law holds that an insurer does not have a duty to supervise an independent contractor hired by the insured. *See Dunn*, 251 P.3d at 1235-36. In *Dunn*, the insured's home flooded. *Id.* at 1234. The insurer recommended a company to remediate the flooding, and the insured hired that company. *Id.* The company failed to remediate the flooding and the insured suffered significant property damage. *Id.* The insured sued the insurer, arguing that the insurer breached its duty of good faith and fair dealing in recommending a company that proved unable to adequately remediate the flooding. *Id.* The Colorado Court of Appeals held that, "when an insured selects and retains an independent contractor, even upon the recommendation of his or her insurer, the insured has primary responsibility for supervising the contractor, absent any representation that the insurer would assume that duty." *Id.* at 1236. The court also stated that, "when an independent contractor's negligence causes damage beyond the initial loss, the insured's proper remedy is to recover from that contractor." *Id.*

Mr. Cranor argues that Crash Champions was not an independent contractor. Although plaintiff does not say so, the implication of his argument is that the State Farm-Crash Champions relationship is that of principal-agent and that State Farm is vicariously liable for the actions of Crash Champions. *See* Docket No. 60 at 8-11.

"An agent is one who acts for or in the place of another by authority from him, or one who is entrusted with the business of another." *Digital Landscape Inc. v. Media Kings LLC*, 440 P.3d 1200, 1212 (Colo. App. 2018) (citation omitted). The Colorado Supreme Court has noted several different types of relationships that exist in agency law: principal-agent, master-servant, and employer-independent contractor. *Grease Monkey Int'l, Inc. v. Montoya*, 904 P.2d 468, 472 (Colo. 1995). These relationships "may or may not overlap." *Id.* The Court finds that none of these theories of relationships are supported by Mr. Cranor's evidence. For a principal-agent relationship, "[t]he distinguishing characteristic of the *agent* is that he represents his principal contractually. If properly authorized he makes contracts or other negotiations of a business nature on behalf of his principal and by which his principal is bound." *Id.* Mr. Cranor identifies no evidence that State Farm authorized Crash Champions to make contracts or other negotiations on State Farm's behalf.

"Under the master-servant doctrine, an employer or principal may be liable for the negligence of an employee or agent who acted within the scope of his or her employment or agency." *Settle v. Basinger*, 411 P.3d 717, 724 (Colo. App. 2013). "For this doctrine to apply, the employer or principal must have the power and right to control the employee's or agent's actions within the scope of the employment or agency." *Id.* Mr. Cranor identifies no evidence that State Farm holds the kind of power and control over the work of Crash Champions necessary to make this theory of agency relevant.

"An independent contractor is one who engages to perform services for another, according to his own methods and manner, free from the direction and control of the employer in all matters relating to the performance of the work, and accountable to him

only for the result to be accomplished." *Digital Landscape*, 440 P.3d at 1212 (internal

quotations and citation omitted). "An independent contractor 'may or may not be an

agent.'" *Id.* (quoting Restatement (Second) of Agency § 2(3) (Am. Law Inst. 1958)).

"An independent contractor is not an agent if 'he is not a fiduciary, has no power to

make the one employing him a party to a transaction, and is subject to no control over

his conduct.'" *Id.* (quoting Restatement (Second) of Agency § 2(3), cmt. b.). Crash

Champions, as a Select Service provider of State Farm, may be an independent

contractor of State Farm, engaged to perform repair work for State Farm's insureds.

*See id.* But Mr. Cranor adduces no evidence of a fiduciary relationship between Crash

Champions and State Farm, no evidence of the ability of Crash Champions to bind

State Farm to a contract, and no evidence of the conduct of Crash Champions being

subject to the control of State Farm.[16] *See id.* Thus, the Court finds that Mr. Cranor

has failed to create a genuine dispute of material fact as to whether State Farm could

be found vicariously liable for the poor repairs of Crash Champions.

Another aspect of plaintiff's theory that State Farm is liable for Crash

Champions's poor repairs is that "Plaintiff's imputing of CC's conduct on State Farm is

not limited to whether or not State Farm had such a duty at common law, but also

---

[16] Much of the evidence that Mr. Cranor cites in support of its claim that Crash
Champions is not an independent contractor consists of facts not properly before the
Court. For example, most of the "facts" cited on pages 10-11 of plaintiff's response
brief, Docket No. 60, are not found in plaintiff's Statement of Additional Undisputed
Material Facts, but rather are simply citations to discovery in the case. However, the
Court's practice standards require a party to put any disputed or undisputed facts in a
section of the brief labeled as such. *See* Practice Standards (Civil cases), Chief Judge
Philip A. Brimmer, § III.F.3.b.v. A party opponent has no obligation to admit or deny
facts outside of such a section. *In re HomeAdvisor, Inc. Litig.*, No. 16-cv-01849-PAB-
KAS, 2024 WL 4187099, at *6 (D. Colo. Sept. 13, 2024). Thus, the Court will not
consider such evidence.

hinges on whether supervision of CC was in alignment with insurance industry standards." Docket No. 60 at 12. Mr. Cranor then cites the rebuttal report of his claims handling expert, Mr. Castillo, that "[t]here is an insurance industry standard when dealing with direct repair partners like the 'Service Select' program. The insurance company will not only act as a supervisor and monitor the repairs, but also has a duty to ensure those repairs are performed correctly through a quality control aspect of the claim." *Id.* (quoting Docket No. 60-2 at 3-4). As noted by State Farm, Docket No. 65 at 7, Mr. Castillo does not identify the source of the industry standard that he relies upon. An expert cannot base an opinion on mere *ipse dixit*. *Roe v. FCA US LLC*, 42 F.4th 1175, 1181 (10th Cir. 2022). Thus, the Court will not consider Mr. Castillo's opinion, which is not separately identified as a disputed or undisputed fact under the Court's Practice Standards, and which is otherwise not admissible under Fed. R. Evid. 702. The Court concludes that Mr. Cranor fails to show a genuine dispute of material fact as to his claim that State Farm was unreasonable in not assuming the cost of Crash Champions's poor repairs.

### 3. February 2023 "Cover Up"

In the complaint, Mr. Cranor alleges that:

> Defendant also intentionally attempted to engage in a cover up on February 10, 2023, when it inspected Plaintiff's truck and told him they did not see any issues at all with the truck, other than some minor issues with the dash. There is simply no way that Defendant's inspector would not be able to see the damages depicted in the photos above, which did not require disassembly to see.

Docket No. 4 at 17, ¶ 50. The Court understands the complaint to assert a theory that State Farm acted unreasonably by engaging in a "cover up" regarding the damage to Mr. Cranor's truck. State Farm's motion for summary judgment argues that there is no support for Mr. Cranor's allegation that some sort of "cover up" occurred in relation to

the February 10, 2023 inspection.  Docket No 57 at 12.  Notably, Mr. Cranor's response does not appear to defend the allegation in the complaint.  Thus, the Court finds that Mr. Cranor has failed to create a genuine dispute of material fact as to whether State Farm acted unreasonably by engaging in a "cover up."

### 4.  General Delay, Including Negotiations over Valuation

Mr. Cranor's next theory of unreasonable conduct relates to the overall amount of time that State Farm took to resolve his insurance claim.  Docket No. 60 at 16-19.  Mr. Cranor argues that the relevant period of delay is from November 15, 2022, the date he brought the truck to Crash Champions, to April 24, 2023, the date State Farm issued its final payment to him.  *Id.* at 16-17.  Mr. Cranor attributes to State Farm various instances of allegedly unreasonable delays over that five-month period.  *Id.* at 16-19.  First, he claims that State Farm is responsible for the two-and-a-half months that his truck was at Crash Champions.  *Id.* at 16.  Second, he asserts that State Farm is responsible for delays in reaching the total loss determination on his truck.  *Id.*  Third, he argues that State Farm is responsible for delays in reaching the ultimate valuation of his truck.  *Id.* at 16-19.

### a.  Time that the truck was at Crash Champions

The Court finds that any delays that occurred at Crash Champions are not attributable to State Farm.  Whether those two-and-a-half months were an unreasonable amount of time for the truck to be an autobody shop is ultimately not relevant to this analysis.  Mr. Cranor chose to take his truck to Crash Champions, and, as the Court has already found, State Farm is not liable for the actions of Crash Champions.  Thus, any unreasonable delay that occurred in those first two-and-a-half months is not attributable to State Farm.

19

### b.  Time in making the total loss determination

Second, the Court finds that Mr. Cranor has failed to create a genuine dispute of material fact as to whether State Farm was responsible for unreasonable delays in determining that the truck was a total loss.  Mr. Cranor notified State Farm on January 31, 2023 that Crash Champions had failed to fix problems with the truck.  Docket No. 57 at 4, ¶ 14.  State Farm inspected the truck on February 10, 2023.  *Id.*, ¶ 15.  Mr. Cranor then took the truck to another shop for repairs.  Docket No. 60 at 4, ¶ 30.  Then, on March 15, 2023, Mr. Cranor took the truck to Nylund's.  *Id.*, ¶ 32.  On March 20, 2023, State Farm inspected the truck at Nylund's.  Docket No. 57 at 4, ¶ 17.  On March 24, 2023, State Farm determined the truck to be a total loss.  *Id.*, ¶ 18.

In *Glacier Const. Co. v. Travelers Prop. Cas. Co. of Am.*, 569 F. App'x 582 (10th Cir. 2014) (unpublished), the Tenth Circuit took up an appeal from the District of Colorado involving bad faith insurance claims under Colorado law.  In that case, the plaintiff filed a claim with the insurer on July 30, 2009.  *Id.* at 590.  On August 26, 2009, the insurer notified plaintiff that it needed to inspect the property and gather additional information.  *Id.*  On October 22, 2009, an insurance adjuster visited the property.  *Id.* During the visit, the adjuster requested additional information and received that information on November 3, 2009.  *Id.*  On December 2, 2009, the insurer denied the claim.  *Id.*  The court held that, based on the timing of events, summary judgment was appropriate because "no reasonable jury could have found that [the insurer] unreasonably delayed or denied processing [plaintiff's] claim."  *Id.* at 591.  In the present case, State Farm waited only 10 days to inspect Mr. Cranor's truck after receiving the January 31, 2023 notification that there was an issue with the repair.  Docket No. 57 at 4, ¶¶ 14-15.  When Mr. Cranor took the truck to Nylund's on March 15, 2023, after

another failed repair attempt in February, State Farm conducted an inspection five days later.  Docket No. 60 at 4-5, ¶¶ 30-32; Docket No. 57 at 4, ¶ 17.  Once State Farm had completed the inspection, it reached a loss determination four days later.  Docket No. 57 at 4, ¶ 18.  The Court finds that no reasonable juror could find unreasonable delay given this timeline.[17]

### c.  Time and nature of valuation negotiations

The Court finds that Mr. Cranor has failed to create a genuine dispute of material fact as to whether State Farm is responsible for delays between the date it determined the truck to be a loss and the date that State Farm issued the final payment.  State Farm deemed the truck a total loss on March 24, 2023.  Docket No. 57 at 4, ¶ 18.  State Farm issued its final payment on April 24, 2023.  *Id.*, ¶ 19.  The Court understands Mr. Cranor's argument to have several components: 1) concern about the amount of time from March 24 to April 24; 2) concern about the sufficiency of State Farm's initial valuation; and 3) concern about the fact that State Farm and Mr. Cranor negotiated back-and-forth over the course of the process.  As to the first concern, the Court notes that, "[u]nder Colorado law, there is no brightline rule for the length of time that constitutes per se unreasonable delay in evaluating a claim." *Iwaskow v. Safeco Ins. Co. of Am.*, No. 21-cv-00005-PAB-SBP, 2023 WL 6376712, at *7 (D. Colo. Sept. 29, 2023).  However, the Tenth Circuit has held that, "where an insurance company . . . presented a settlement offer 46 days after receiving the demand, no

---

[17] The "reasonableness" of an insurer's actions is evaluated based on "reasonableness under the circumstances." *Estate of Morris*, 192 P.3d at 523.  *Glacier Construction* involved issues with construction at an industrial site.  569 F. App'x at 584-85.  Plaintiff has not adduced any evidence as part of his summary judgment briefing as to why the timing of State Farm's actions constituted unreasonable delay under the circumstances.

21

reasonable jury could find the insurer unreasonably delayed investigating the claim." *Id.*
(citing *Williams v. Owners Ins. Co.*, 621 F. App'x 914, 920 (10th Cir. 2015) (applying
Colorado law)).  The Court thus rejects the first concern as a possible basis for
precluding summary judgment.  *See id.*; *see also KAT Constr. Mgmt. LLC v. Safeco Ins.
Co. of Am.*, No. 19-cv-02981-RM-KLM, 2022 WL 136905, at *6 (D. Colo. Jan. 14, 2022)
("[u]nreasonable delay typically involves an insurance company sitting on a claim for
months or even years.") (quoting *Vinnedge v. Owners Ins. Co.*, 542 F. Supp. 3d 1145,
1151 (D. Colo. 2021)).

As to the second concern, the Court rejects the argument that State Farm acted
in bad faith merely because its initial offer – an ACV of $59,579 – was lower than the
$65,000 Mr. Cranor viewed as the appropriate starting point and lower than the desired
and lower than the $67,451 valuation to which the parties ultimately agreed.  A single
settlement offer with which a plaintiff disagrees does not constitute bad faith.  *See
Iwaskow*, 2023 WL 6376712, at *7 ("If an insurance company risks a bad faith claim for
failing to make a settlement offer deemed acceptable by the insured, then the price of
peace becomes total capitulation.") (quoting *Sw. Nurseries, LLC v. Florists Mut. Ins.*,
Inc., 266 F. Supp. 2d 1253, 1259 (D. Colo. 2003)).  The Court thus rejects this concern
as a basis for precluding summary judgment.

As to the third concern, the Court disagrees with Mr. Cranor that State Farm's
back-and-forth negotiations with Mr. Cranor constituted unreasonable delay.  State
Farm argues that it was entitled to latitude in reaching an assessment of the truck's
value.  Docket No. 57 at 14.  The crux of Mr. Cranor's theory appears to be that State
Farm acted unreasonably in negotiating the value of the claim.  However, mere

valuation disputes do not constitute unreasonable conduct.  *See Johnson v. State Farm*

*Mut. Auto. Ins. Co.*, No. 21-cv-01712-MDB, 2022 WL 17976773, at *5 (D. Colo. Oct. 24,

2022) ("a valuation dispute is not evidence of bad faith or unreasonable conduct.")

(citing *Vaccaro v. Am. Family Ins. Grp.*, 275 P.3d 750, 759-60 (Colo. App. 2012)).

Of course, an insurer cannot avoid liability by merely framing delays and denials

as being due to valuation disputes.  *See Baker v. Allied Prop. & Cas. Ins. Co.*, 939 F.

Supp. 2d 1091, 1111 (D. Colo. 2013) (citing *Vaccaro*, 275 P.3d at 760).  But it is also

insufficient "for an insured to simply tender a different valuation of a claim [to

demonstrate unreasonableness on the part of the insurer]."  *Green Earth Wellness Ctr.,*

*LLC v. Atain Specialty Ins. Co.*, 163 F. Supp. 3d 821, 836 (D. Colo. 2016).  "Indeed,

were the Court to hold that a mere disagreement between parties as to the valuation of

a claim created a triable bad faith claim, essentially every insurance dispute would

proceed to trial on such a claim, as disputes between the insurer and insured over the

proper valuation of the loss are routine."  *Id.* (emphasis omitted).  Thus, a plaintiff must

come forth with evidence to show that the valuation was objectively unreasonable.  *Id.*

The Court finds that Mr. Cranor has failed to adduce any evidence that would support

objective unreasonableness.  Instead, the facts reflect that State Farm repeatedly

incorporated information from Mr. Cranor and revised its valuation upward based on

that information.  Docket No. 57 at 4, ¶ 19; Docket No. 60 at 5-6, ¶¶ 34-40, 42-47, 49.

These facts do not create a genuine dispute as to the reasonableness of State Farm's

actions.  *See Zarevo v. State Farm Mut. Auto. Ins. Co.*, No. 22-cv-00117-RMR-NYW,

2022 WL 1061910, at *5 (D. Colo. Apr. 8, 2022), *report and recommendation adopted*,

2022 WL 3099205 (D. Colo. June 15, 2022) (finding that insurer did not act

unreasonably in light of the fact that the insurer arrived at a valuation but was willing to consider additional information from the plaintiff).

Mr. Cranor has failed to create a genuine dispute of material fact on any theory of unreasonable conduct. Given that unreasonable conduct is a common element to both Mr. Cranor's statutory and common law bad faith claims, *see Bruce*, 2016 WL 11693598, at *9, the Court finds that both of Mr. Cranor's claims fail. The Court will therefore grant State Farm's motion for summary judgment and dismiss with prejudice both of Mr. Cranor's claim.

State Farm filed a motion to exclude, pursuant to Federal Rule of Evidence 702, expert opinions of Mr. Castillo. Docket No. 56. As the Court has now dismissed Mr. Cranor's claims, the Court will deny as moot the motion to exclude Mr. Castillo's opinions.

## IV. CONCLUSION

It is therefore

**ORDERED** that Defendant's Motion for Summary Judgment [Docket No. 57] is **GRANTED**. It is further

**ORDERED** that Mr. Cranor's claims against State Farm are **DISMISSED with prejudice**. It is further

**ORDERED** that Defendant's 702 Motion to Strike the Opinions of Plaintiff's Expert Aaron Castillo [Docket No. 56] is **DENIED as moot**. It is further

**ORDERED** that this case is closed.

DATED February 25, 2026.

BY THE COURT:

s/ Philip A. Brimmer
PHILIP A. BRIMMER
Chief United States District Judge